# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| PAMELA RIGGINS, Individually, and on Behalf of the Estate of HAYWOOD RIGGINS, MELYNDA RIGGINS, BRANDON RIGGINS, and KIRSTIE RIGGINS, § § § § § § §<br><br>*Plaintiffs*, §<br>v. §<br>§<br>GRAYSON COUNTY, TEXAS, TYLER LELIO, ERINN GRISOLIA, CORPORAL GARCIA, MICHAEL LEHMAN, REECE MILLER, and MAX MOORE, § § § § § § §<br><br>*Defendants*. § | Civil Action No. 4:25-cv-592<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Sealed Motion to Dismiss (the "Motion") (Dkt. #16). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

### BACKGROUND

This case arises out of the death of a pretrial detainee ("Mr. Riggins"). Plaintiffs Pamela Riggins ("Mrs. Riggins"), Individually and on Behalf of the Estate of Mr. Riggins, Melynda Riggins, Brandon Riggins, and Kirstie Riggins (collectively, "Plaintiffs") bring this action against Defendants[1] for the death of Mr. Riggins while in custody at Grayson County Jail (Dkt. #2).

---

[1] As alleged in Plaintiffs' Complaint, Defendants are Grayson County, Texas ("Grayson County"), Tyler Lelio ("Lelio"), Erinn Grisolia ("Grisolia"), Corporal Garcia ("Garcia"), Michael Lehman ("Lehman"), Reece Miller ("Miller"), and Max Moore ("Moore") (Dkt. #2 at ¶¶ 5–11).

The factual allegations in Plaintiffs' Complaint relating to Mr. Riggins's death proceed as follows (Dkt. #1 at ¶¶ 14–117). On June 2, 2023, Mr. Riggins was arrested for Driving While Intoxicated and subsequently booked in the Grayson County Jail (Dkt. #2 at ¶¶ 24–35, 40–41). Mr. Riggins was a severe alcoholic and upon being incarcerated, he began experiencing major alcohol withdrawals, which quickly progressed into Delirium Tremens[2] (Dkt. #2 at ¶¶ 50–60). The Grayson County jails staff knew Mr. Riggins was withdrawing from alcohol and placed him in an observation cell to be monitored (Dkt. #2 at ¶ 47). Defendants Garcia, Lehman, Miller, and Moore failed to provide Mr. Riggins with medical care or attention despite knowing Mr. Riggins was detoxing, experiencing Delirium Tremens by way of seizures, and suffering from incontinence (Dkt. #2 at ¶¶ 68, 80). Mr. Riggins suffered for three days inside the observation cell—not eating, experiencing incontinence, developing bedsores from not moving, and seizing (Dkt. #2 at ¶¶ 77, 79–80, 114). On June 5, 2023, at 6:03 a.m., Mr. Riggins was pronounced dead after being found unresponsive in his cell (Dkt. #2 at ¶¶ 90–96).

Plaintiffs contend Grayson County Jail's policies, practices, and training for its personnel required that inmates detoxing from alcohol and experiencing Delirium Tremens be placed in an observation cell without medical attention until the withdrawals ended (Dkt. #2 at ¶ 111). Plaintiffs allege that Defendants were responsible for the care and safety of Mr. Riggins as a pretrial detainee and their conduct in refusing to provide medical care or attention to Mr. Riggins was

---

[2] "'Delirium tremens, or the "DTs," affects roughly 5 percent of alcoholics in the withdrawal stage and about 30 percent of sufferers of rum fits. It generally makes its appearance within three to five days after drinking has ceased. The standard signs of delirium tremens include agitation, fever, sweating, tachycardia and tremor. Patients become so disoriented that they do not know what time it is or where they are. They suffer such confusion that memory lapses block out both recent events and those long past. Vivid visual hallucinations are also common.'" *Thompson v. Upshur County*, 245 F.3d 447, 453 n.2 (5th Cir. 2001) (quoting 9 *Attorneys' Textbook of Medicine* P 59A.22(2) (Gray & Gordy, eds., 3rd ed. 2000)).

unconstitutional (Dkt. #2 at ¶ 113). Finally, Plaintiffs assert that Mr. Riggins's death was preventable (Dkt. #2 at p. 2).

Plaintiffs' Complaint, filed on June 3, 2025, specifically alleges the following causes of action: (1) deliberate indifference to medical needs in violation of the Fourteenth Amendment against Defendants Lelio, Grisolia, Garcia, Lehman, Miller, and Moore pursuant to 42 U.S.C. § 1983; (2) practice and custom of deliberate indifference in violation of the Fourteenth Amendment against Defendant Grayson County, Texas pursuant to 42 U.S.C. § 1983; (3) wrongful death; and (4) survival action (Dkt. #2 at ¶¶ 118–255). On August 19, 2025, Defendants Grayson County, Garcia, Lehman, Miller, and Moore filed their Motion[3] urging the Court to Dismiss Plaintiffs' Complaint under Rule 12(b)(6) (Dkt. #16). On October 22, 2025, Plaintiffs responded (Dkt. #23). On November 11, 2025, Defendants[4] replied (Dkt. #28). The Motion is now ripe for adjudication.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the

---

[3] Defendants Lelio and Grisolia did not join the Motion or file a separate motion to dismiss in this matter.

[4] Unless stated otherwise, the use of the term Defendants hereinafter refers to Grayson County, Garcia, Lehman, Miller, and Moore.

plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen,* 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id*. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a

4

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Defendants urge the Court to dismiss Plaintiffs' Complaint. In their Complaint, Plaintiffs assert claims under § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

Plaintiffs raise two Fourteenth Amendment violation claims under 42 U.S.C. § 1983: (1) deliberate indifference to medical needs against Garcia, Lehman, Miller, and Moore (the "Individual Defendants"); and (2) practice and custom of deliberate indifference against Grayson County (Dkt. #2 at ¶¶ 118–236). The Individual Defendants and Grayson County argue Plaintiffs cannot establish a valid claim under § 1983 and that the Individual Defendants are entitled to qualified immunity (Dkt. #16 at pp. 7–27).

First, the Court will analyze whether Plaintiffs' § 1983 claims against the Individual Defendants should be dismissed. Second, the Court will consider whether the Individual Defendants are entitled to qualified immunity. Third, the Court will determine whether Plaintiffs' § 1983 claims against Grayson County should be dismissed.

I.   **Individual Defendants**

The Court begins by determining whether Plaintiffs' Complaint alleges facts that show the Individual Defendants violated Mr. Riggins's Fourteenth Amendment rights. "The constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Martinez v. City of North Richland Hills*, 846 F. App'x 238, 241 (5th Cir. 2021) (per curiam) (unpublished) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996)). "The Fourteenth Amendment guarantees pretrial detainees a right 'not to have their serious medical needs met with deliberate indifference on the part of the confining officials.'" *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Thompson*, 245 F.3d at 457). "To succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) the official actually drew that inference." *Dyer*, 964 F.3d at 380 (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001)).

Plaintiffs allege just that. First, Plaintiffs allege the Individual Defendants were independently aware of facts from which they could infer that a substantial risk of serious harm existed as it relates to Mr. Riggins's medical condition while in the observation cell (Dkt. #2 at ¶¶ 151-57, 161–66). Specifically, Garcia, Lehman, and Miller knew Mr. Riggins was detoxing from alcohol, experiencing Delirium Tremens, and having seizures (Dkt. #2 at ¶¶ 154–55), and Moore, based on a conversation with Mrs. Riggins, knew Mr. Riggins was a severe alcoholic and experiencing Delirium Tremens and incontinence (Dkt. #2 at ¶¶ 162–63).

Second, Plaintiffs allege the Individual Defendants actually drew that inference because Mr. Riggins's worsening medical condition while detoxing was so obvious and the need for medical attention was so apparent that even a layman would recognize that Mr. Riggins required immediate

6

medical care before his eventual death (Dkt. #2 at ¶¶ 158-60, 167–69). Plaintiffs point to another inmate, Wesley Cox, who Plaintiffs allege is a layperson and observed Mr. Riggins after his booking (Dkt. #23 at p. 16). Ms. Cox stated Mr. Riggins was confused, his condition became concerning to other inmates, and they began begging jail staff to help him (Dkt. #2 at ¶¶ 45, 104; Dkt. #23 at p. 16). Plaintiffs further allege the Individual Defendants knew Mr. Riggins was placed in an observation cell because he was detoxing and needed to be monitored (Dkt. #2 at ¶ 159). Plaintiffs also allege that because none of the Individual Defendants provided medical care or summoned medical care for Mr. Riggins:

> [H]e suffered numerous seizures, the physical pain and suffering associated with those seizures and Delirium Tremens, the mental torment and anguish associated with his agonizing, painful, and slow death over a three day period locked in an observation cell as he withdrew from alcohol in front of these [Individual] Defendants, and ultimately his death.

(Dkt. #2 at ¶¶ 169–70).

Thus, Plaintiffs have alleged the Individual Defendants were aware of facts from which the inference could be drawn that Mr. Riggins was in substantial risk of serious harm and, despite knowing this, they did not summon medical care until he was found unresponsive in his observation cell. In accepting as true all well-pleaded facts in Plaintiffs' Complaint and viewing those facts in the light most favorable to the Plaintiffs, Plaintiffs have stated a plausible deliberate-indifference claim for relief against the Individual Defendants. *Bowlby*, 681 F.3d at 219.

## II.    Qualified Immunity

The Court next addresses whether Plaintiffs' deliberate-indifference claims against the Individual Defendants are barred by qualified immunity. Public officials whose positions entail the exercise of discretion may be protected from personal liability by the defense of qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts the

defense of qualified immunity and has established that the alleged actions were conducted pursuant to the exercise of his discretionary authority, the burden then shifts to the plaintiff to rebut this defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

Courts have historically conducted a two-pronged analysis to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, courts must determine whether a "constitutional right would have been violated on the facts alleged." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). Second, if a constitutional right was violated, courts then determines whether "the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* The Supreme Court instructs district courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, Defendants argue "it is clear that Mr. Riggins's constitutional rights were not violated by any Defendant" (Dkt. #16 at p. 24), and "Plaintiff[s] improperly attempt[] to attribute a complete collection of knowledge of every symptom Mr. Riggins could have been experiencing to each individual officer" (Dkt. #16 at p. 26). Specifically, Defendants note that Plaintiffs allege Moore only knew about two instances of incontinence, Garcia was merely stationed in the same area in which Mr. Riggins was held, and Lehman and Miller were on duty in the same area in which Mr. Riggins was housed on the date that he was found unresponsive (Dkt. #16 at pp. 26–27). Finally, Defendants argue that there are no facts in the Complaint "demonstrating that these officers knew or should have known how Mr. Riggins was feeling that day" and "Plaintiffs' well

pleaded facts demonstrate minimal involvement on the part of each named Defendant with no demonstration of individual liability" (Dkt. #16 at p. 27).

Based on the analysis in the previous section, the Court finds that these arguments present an inaccurate summary of Plaintiffs' allegations found in the Complaint. Indeed, Plaintiffs allege that Mr. Riggins's constitutional rights were violated when each of the Individual Defendants refused to treat him and ignored his medical needs, or at a minimum engaged in conduct that clearly evinces a wanton disregard for Mr. Riggins's serious medical needs—namely, Mr. Riggins was seizing caused by Delirium Tremens, not eating, experiencing incontinence, and developing bedsores from not moving (Dkt. #2 at ¶¶ 121-171). Taken as true, these allegations support Plaintiffs' claim that Mr. Riggins's Fourteenth Amendment rights—namely, not to have his serious medical needs met with deliberate indifference on the part of the confining official—were violated. Thus, the first prong of the analysis has been sufficiently alleged. *Flores*, 381 F.3d at 395; *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

Next, the Court addresses whether the Individual Defendants' actions violated clearly established statutory or constitutional rights of which a reasonable person would have known. The law is established if a reasonable official would understand that their conduct violates the asserted right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of the right [are] sufficiently clear" such that every "reasonable official would have understood that what he is doing violates that right." *Id*. The clearly established inquiry does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *See id*.

9

The Fifth Circuit has admitted that its "deliberate-indifference cases are not a paradigm of consistency." *Dyer*, 964 F.3d at 383. As the Fifth Circuit did in *Dyer*, the Court will consider *Thompson v. Upshur County*, which involves a deliberate-indifference claim arising out of a detainee's death in jail from a seizure brought on by Delirium Tremens. 245 F.3d 447, 452–54 (5th Cir. 2001). In *Thompson*, the detainee was shaking, sweating profusely, and hallucinating. *Id*. The detainee was observed by medical staff that confirmed his alcohol detoxing. *Id*. at 453. The detainee refused to go to the hospital and signed a refusal of medical treatment form. *Id*.

The detainee was placed in a special "detox" cell to be observed. *Id*. The detainee's condition worsened, and he began to collide with objects in his cell, sometimes falling and striking his head against the window, floor or concrete bench of his cell. *Id*. at 454. Eventually, the detainee appeared to calm down. *Id*. The sergeant jailer at this time discussed the detainee's condition with the incoming jail staff that would relieve her from observing the detainee. *Id*. For various reasons, the sergeant jailer instructed the staff not to provide the detainee with medical attention. *Id*. The detainee then had a seizure, stopped breathing, and died. *Id*. An autopsy revealed the cause of death to be the result of Delirium Tremens. *Id*.

In affirming the district court's decision to deny the sergeant jailer's qualified immunity argument, the Fifth Circuit reasoned that "all reasonable jailers would have recognized the constitutional obligation to summon medical assistance well before [the detainee] died." *Id*. at 464. The Fifth Circuit also refused to accept the argument that "[the detainee's] refusal of medical care in Marion County could be reasonably understood to absolve [the sergeant jailer] of her constitutional duty to summon professional medical assistance." *Id*.

The Court notes the similarities between *Thompson* and the present case. With respect to the deliberate-indifference claim raised against the Individual Defendants, Plaintiffs allege a non-party individual, Corporal Gentry, asked about Mr. Riggins's status, to which the booking officers responded that he was detoxing and having seizures (Dkt. #2 at ¶¶ 151–53). Plaintiffs contend that the booking officers that were aware Mr. Riggins was detoxing from alcohol and experiencing Delirium Tremens by way of seizure and incontinence were Garcia, Lehman, and Miller (Dkt. #2 at ¶ 155). Garcia, Lehman, and Miller were stationed at Mr. Riggins's observation cell three, and Plaintiffs allege that Garcia, Lehman, and Miller failed to provide Mr. Riggins with proper medical care or attention despite knowing he was at risk of serious harm medical condition (Dkt. #2 at ¶¶ 156–57).

With respect to Moore, Plaintiffs allege that the day after Mr. Riggins was detained, Moore spoke with Mrs. Riggins to inform her that Mr. Riggins was experiencing incontinence (Dkt. #2 at ¶ 161). Mrs. Riggins told Moore that Mr. Riggins did not have a history of incontinence (Dkt. #2 at ¶ 162). Plaintiffs contend that by this day, Mr. Riggins was already placed in observation cell three and jail staff, including Moore, knew Mr. Riggins was a severe alcoholic and experiencing Delirium Tremens (Dkt. #2 at ¶¶ 163–64). Thus, Plaintiffs allege that despite knowing Mr. Riggins needed medical attention, Moore failed to provide it (Dkt. #2 at ¶¶ 164–65).

Like the detainee in *Thompson*, Plaintiffs further allege that Mr. Riggins remained inside of the observation cell for three days —not eating, experiencing incontinence, developing bedsores from not moving, and having seizures (Dkt. #2 at ¶¶ 77, 79–80, 114). On June 5, 2023, at 6:03 a.m., Mr. Riggins was pronounced deceased after being found unresponsive in his cell (Dkt. #2 at ¶¶ 90–

96). Mr. Riggins's autopsy report lists the cause of death as "Complications of chronic alcoholism" (Dkt. #2 at ¶ 98).

Defendants argue Plaintiffs' allegations are insufficient to establish the second prong of the qualified immunity analysis. Specifically, the Individual Defendants admit they knew Mr. Riggins was detoxing and someone may have known he was experiencing seizures but Mr. Riggins was being consistently monitored (Dkt. #16 at p. 25). Defendants further contend that there was no moment where Mr. Riggins was in "critical need of help" to which the Individual Defendants did not respond (Dkt. #24 at p. 25). Defendants finally assert that Mr. Riggins never asked for help, and since he was unaware of his own medical condition, it would be unreasonable to impute knowledge of a serious risk of harm on non-medically trained jail personnel, such as the Individual Defendants (Dkt. #24 at p. 25). Defendants maintain that, at most, Plaintiffs' allegations amount to the Individual Defendants' negligence (Dkt. #16 at p. 26).

The Court is not convinced by Defendants' arguments and *Thompson* does not support the assertion that it was Mr. Riggins's duty to actively ask for help to ensure his constitutional rights were protected and that their monitoring was sufficient to absolve the Individual Defendants of liability (Dkt. #24 at p. 25). 245 F.3d at 447. Indeed, the facts, as alleged, suggest Mr. Riggins was in critical need of help while being monitored by the Individual Defendants in the observation cell, he was unable to ask for help, his medical condition worsened, and he did not receive the medical care he needed before dying (Dkt. #2 at ¶¶ 77, 79–80, 114). Moreover, in *Thompson*, the detainee in that case refused medical treatment *in writing*, and still, the Fifth Circuit found the detainee's refusal of medical care did not absolve the jailer of her constitutional duty to summon professional medical assistance. 245 F.3d 447, 452–54 (emphasis added). Thus, like the Fifth Circuit held in

12

*Dyer*, "*Thompson* defines clearly established law in sufficient detail to have notified the [jailer] that their actions were unconstitutional." 964 F.3d at 384. Based on the facts as alleged, the Individual Defendants' actions violated the clearly established constitutional rights of pretrial detainees, which a reasonable officer or jailer would have known.

Accordingly, because the Court cannot find that Individual Defendants' conduct was objectively reasonable, the Individual Defendants are not entitled to their qualified immunity defense to Plaintiffs' § 1983 claim for the violation of Mr. Riggins' Fourteenth Amendment rights.

### III.  Municipal Liability

Finally, the Court addresses whether Grayson County can be held liable for upholding a practice and custom of deliberate indifference in violation of Fourteenth Amendment. Defendants contend that Plaintiffs failed to allege Grayson County—a municipality—can be held liable for the alleged violations of Mr. Riggins's constitutional rights.

"To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'" *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). To do so, "[a] plaintiff must identify: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id*. at 541–42 (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). These three elements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). A plaintiff asserting § 1983 claims is required to plead specific facts, not merely

13

conclusory allegations, with sufficient particularity to meet all elements of recovery. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992).

Defendants argue that "the pleadings clearly show that Mr. Riggins's constitutional rights were not violated;" thus, "Plaintiffs' claims against [Grayson] County must fail regardless of the legal theory under which they arise" (Dkt. #16 at p. 31). Defendants continue that "[e]ven if Plaintiffs had alleged that Mr. Riggins's constitutional rights were violated, however, they have not sufficiently pleaded a cause of action against Grayson County" (Dkt. #16 at p. 31).

The Court disagrees, and to begin, Defendants identify the following purported policies, customs, or practices in the Grayson County Jail at issue in Plaintiffs' Complaint:

> (1) failure to provide medical treatment to inmates suffering withdrawals from alcohol; (2) failure to provide medical treatment to inmates experiencing seizures from alcohol withdrawal; (3) failure to provide medical treatment to inmates experiencing Delirium Tremens; (4) failure to provide medical treatment to inmates experiencing incontinence from alcohol withdrawal and Delerium Tremens; and (5) failure to adequately monitor inmates being held in the observation cells due to detoxing from alcohol; (6) failing to train jailers on how to respond when an inmate is experiencing Delerium Tremens; (7) failing to train jailers on how to respond when an inmate is suffering seizures; (8) failing to train jailers on how to respond when an inmate is experiencing withdrawals from alcohol that involve incontinence, not eating, not moving, and seizures; (9) maintaining a policy and practice that inmates experiencing withdrawals from drugs and alcohol would just be left in an observation cell without medical treatment until they became better on their own; (10) not having a medical doctor available in the jail to examine or treat inmates detoxing from alcohol and experiencing withdrawals and Delirium Tremens; (11) not having a detox program or implementing withdrawal management protocols for inmates detoxing from alcohol and experiencing withdrawals; and (12) not providing medication or vitamin supplements for inmates detoxing from alcohol and experiencing withdrawals.

(Dkt. #16 at p. 31; Dkt. #2 at ¶ 228).

Plaintiffs also identify the policymaker as Sheriff Tom Watts (Dkt. #2 at ¶ 216), and Plaintiffs allege Grayson County's "policies and/or customs were the moving force leading to the constitutional violation of failing to provide adequate medical care for Mr. Riggins causing his

14

injuries and ultimately his death" (Dkt. #2 at ¶ 226). Specifically, Plaintiffs contend Grayson County's "policies, practices, customs, and *de facto* policies caused Defendants Lelio, Grisolia, Garcia, Lehman, Miller, and Moore to show their subjective deliberate indifference toward Mr. Riggins' health and safety" despite being "aware of Mr. Riggins' suffering" (Dkt. #2 at ¶ 234). Plaintiffs further contend that because of these policies and customs, "Mr. Riggins was denied adequate medical care in violation of his rights pursuant to the Fourteenth Amendment to the United States Constitution, and he suffered physical injury, physical pain and suffering, mental anguish and emotional distress, and died" (Dkt. #2 at ¶ 235). Plaintiffs go on to allege that there are other instances of inmates suffering from withdrawals in the Grayson County Jail and further allege this demonstrates the implementation of an unconstitutional policy and practice of Grayson County under Sheriff Tom Watts (Dkt. #2 at ¶ 115). Plaintiffs specifically identify Lorelei Palmore, another detainee in the Grayson County Jail, who was detoxing while in custody, not provided medical care or treatment, and died on April 22, 2022 (Dkt. #2 at ¶ 116).

Taking these allegations as true, Plaintiffs have pleaded specific facts to meet all elements of their § 1983 claim against Grayson County for a practice and custom of deliberate indifference in violation of Fourteenth Amendment.

\* \* \*

Accordingly, Plaintiffs' claims for violations of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 survive Rule 12(b)(6) dismissal.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Sealed Motion to Dismiss (Dkt. #16) is hereby **DENIED**.

It is further **ORDERED** that the Parties file a proposed joint scheduling order within fourteen (14) days of this Order.

**IT IS SO ORDERED.**

**SIGNED this 21st day of January, 2026.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE